**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT MILLER,

    Plaintiff,

v.

UNIVERSITY OF MICHIGAN, and
BARB FRITSCH, *sued in her
personal and official capacities*,

    Defendants.

Case No.

Hon.

---

David A. Nacht (P47034)
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Robert Miller ("Plaintiff"), by and through his attorneys, NACHTLAW, P.C., and alleges as follows:

### INTRODUCTION

1. Plaintiff bring claims against Defendants for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), violation the Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2201 *et seq.*, and Assault and/or Battery,

2. Plaintiff's claims arise out of the discriminatory and retaliatory

treatment he experienced at the University of Michigan (hereinafter referred to as "U-M") in the Faculties and Operations division after his coworker, turned boss, hit Plaintiff.

3. Plaintiff, before accepting his employment at U-M, had years of management experience.

4. Plaintiff had no substantial issues with coworkers until meeting Defendant Fritsch.

5. Defendant Fritsch, for absolutely no legitimate reason, struck Plaintiff on July 7, 2022.

6. On August 1, 2022, Defendant Fritsch was appointed Plaintiff's direct supervisor, and, despite Plaintiff reporting Defendant Fritsch on August 2, 2022 to U-M for the assault that occurred on July 7, 2022, the University took no steps to change this decision.

7. Defendant Fritsch retaliated against Plaintiff for reporting her behavior, taking several steps to tarnish his reputation, including, but not limited to, placing him on a Performance Improvement Plan (hereinafter referred to as "PIP") on March 23, 2023 and calling for his termination.

8. Defendant Fritsch treated and retaliated against Plaintiff on the basis of sex, and Defendant U-M did not act on Plaintiff's reports of discriminatory and retaliatory behavior because Plaintiff is a man.

## PARTIES, JURISDICTION, AND VENUE

9. Plaintiff Robert Miller is a man and a resident of Belleville, Michigan, Wayne County.

10. Defendant U-M is a publicly funded and state-operated university located in Ann Arbor, Michigan, Washtenaw County. U-M receives state and federal funding for the provision of higher education.

11. Defendant Barb Fritsch is a Supply Chain Manager employed by Defendant U-M. She is sued in her personal and official capacities.

12. Plaintiff filed notice of his intention to bring claims against Defendants based on the events described herein with the Michigan Court of Claims on April 25, 2024.

13. Plaintiff was issued a Right to Sue Letter from the U.S. Equal Employment Opportunity Commission on February 15, 2024.

14. The events underlying this Complaint occurred in Ann Arbor, Michigan within the Eastern District of Michigan.

15. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## FACTUAL ALLEGATIONS

16. Plaintiff started his employment with Defendant U-M on August 16, 2021 as a Multifunction Material Management Senior Supervisor.

17. In his position, he had to work with Defendant Fritsch, initially as a coworker.

18. Plaintiff received positive feedback on his work and met the expectations Defendant U-M had for him.

19. Plaintiff did not have any issues at work until Defendant Fritsch, for no good reason, repeatedly struck Plaintiff.

20. Defendant Fritsch took this aggressive step in front of another Defendant U-M employee, Scott Babut.

21. On July 7, 2022, Plaintiff was helping Defendant Fritsch locate a lost iPad charger.

22. In frustration, Defendant Fritsch was complaining loudly and erratically about the lost charger to Mr. Babut.

23. Plaintiff approached Defendant Fritsch, who was standing in Mr. Babut's office, and in a joking tone asked why he was being thrown under the bus for the loss of the charger.

24. With no reason or warning, Defendant Fritsch turned toward Plaintiff, grabbed his right arm with her left hand, closed her right fist, and hit Plaintiff three or four times – hard – on the chest.

25. Horrified by Defendant Fritsch's actions and U-M's subsequent decision to make her his supervisor on August 1, 2022, Plaintiff reported the incident

to Sharon Curry on August 2, 2022.

26. Despite Plaintiff's report, Defendant U-M appointed Defendant Fritsch as Plaintiff's supervisor that same month.

27. Thus began a concerted effort by Defendant Fritsch, ultimately legitimatized by Defendant U-M, to get Plaintiff terminated.

28. Defendant Fritsch took actions to treat Plaintiff differently and push him out.

29. On August 2, 2022, just one day after becoming Plaintiff's supervisor and with no reason, Defendant Fritsch emailed Plaintiff stating she could help him find a new job.

30. Plaintiff had not indicated he wanted to switch jobs.

31. On August 16, 2022, Defendant Fritsch increased Plaintiff's workload, but denied him a salary increase.

32. On September 8, 2022, Plaintiff voiced his opinions on goals for the department, after being asked by Jennifer Symanns to speak up.

33. Defendant Fritsch took offense and bluntly asked Plaintiff why he was failing to comply with his work requests – all because he shared an opinion he was expressly asked for.

34. At a meeting on September 22, 2022, once again Plaintiff was given additional job duties and responsibilities without any change in title or compensation.

35. On October 11, 2022, in a meeting where Plaintiff's dedication to his job position and his integrity was questioned by Steve Dolen, who works closely with Defendant Fritsch, after Plaintiff had submitted a grievance about his growing job duties, Plaintiff brought up the July 7, 2022 incident.

36. Mr. Dolen said the matter was investigated, and the investigation was complete. Plaintiff was never told that an investigation was conducted or that Defendant Fritsch was reprimanded for her assault.

37. Defendant Fritsch took her disparate treatment of Plaintiff to the next level when, on March 6, 2023, she gave him his first letter of reprimand *and* she put him on a PIP.

38. Plaintiff was shocked not only by the act of being put on a PIP, but also by the basis for the PIP and the tasks he now needed to complete.

39. Plaintiff contested nearly every fact in both the letter of reprimand and the PIP.

40. The tasks essentially required Plaintiff to document every action every day in a way that was disruptive to his actual job responsibilities.

41. The requirements of the PIP were so confusing that Plaintiff had to reach out to Defendant Fritsch for specific clarification on how to meet them.

42. The PIP was created to set Plaintiff up for failure.

43. The day after, Plaintiff documented his concerns regarding the PIP, highlighting that the PIP was not about his actual performance but a way to suddenly change standards as they applied to him, by emailing both – but separately – Defendant Fritsch and Jennifer Symanns, Senior Labor Relations Representative.

44. On March 8, 2023, Plaintiff followed up his email to Ms. Symanns to once again report Defendant Fritsch's disparate treatment.

45. Once again, nothing was done to address his concerns.

46. Plaintiff, nervous about how Defendant Fritsch would continue to negatively impact his employment, emailed Leola Hearny on March 13, 2023 to request to be removed from the team he was working on, hoping to gain some distance from Defendant Fritsch.

47. That same day, Ms. Hearny responded that he would be switched.

48. That was not enough to stop Defendant Fritsch from reporting negatively on Plaintiff's performance.

49. On March 22, 2023, Defendant Fritsch reported that Plaintiff used a U-M vehicle for a private appointment.[1]

50. Plaintiff had enough of Defendant Fritsch's treatment and decided to

---

[1] On the date at issue, Plaintiff did drive to University of Michigan Medicine during his workday with his work truck. All of Plaintiff's coworkers indicated it should not be an issue. After being written up, Plaintiff found out that a co-worker had used his work truck to pick up lunch about a month or two before his incident; that coworker, upon reasonable belief, received only a verbal warning.

report to U-M Police Department that Defendant Fritsch had struck him on March 23, 2023.

51.     Plaintiff also reported to Geoff Chatas on April 6, 2023 that Defendant Fritsch had been creating a toxic work environment since July of 2022.

52.     Mr. Chatas pointed Plaintiff to his reporting options, including contacting Human Resources, U-M's Equity, Civil Rights & Title IX Office, the Ombudsman's Office, and Faculty and Staff Counseling and Consultation Office.

53.     Plaintiff had already contacted Human Resources and U-M's Equity, Civil Rights & Title IX Office, though he was not successful in getting someone to accept a PIP grievance and/or a Title IX Complaint.

54.     On April 14, 2023, Plaintiff had his 30-Day Disciplinary Review Conference, where he was told that he was not successfully completing his PIP.

55.     Plaintiff did not felt he assessment was fair nor that he was given sufficient information on how to address the concerns.

56.     While he still had time to hypothetically meet the PIP requirements, Plaintiff tested positive for COVID-19 on April 19, 2023.

57.     Plaintiff was told that he could return to work on April 25, 2023 due to the positive diagnosis and that a meeting would be scheduled regarding his PIP.

58.     A Disciplinary Review Conference was set for April 26, 2023, meaning he had only 3 work days between the first and second review.

59. As a result of the second conference, Plaintiff was terminated on April 27, 2023.

60. Plaintiff was treated differently and worse than if he had been a woman.

61. Plaintiff would have not been hit, had all his reports about Defendant Fritsch's conduct ignored, been put on a PIP, and ultimately, been terminated if he were not a man.

62. As a result of Defendants' actions Plaintiff has suffered significant damages.

63. Not only did he suffer loss of reputation, emotional distress, and significant humiliation, but he was out of work for approximately 11 months.

## COUNT I
### Sex Discrimination in Violation of Title VII
### 42 U.S.C. § 2000e *et seq.*
*(against Defendant University of Michigan)*

64. Plaintiff incorporates the preceding allegations as if fully restated herein.

65. At all relevant times, Defendant U-M employed greater than 15 employees, and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and (f).

66. Section 2000e-2 makes it an unlawful employment practice "to discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's …sex…"

67. Plaintiff was qualified for his position as a Multifunction Material Management Senior Supervisor.

68. Defendant U-M subjected Plaintiff to intentional discrimination based on his sex by arbitrarily and capriciously disregarding his complaint against Defendant Fritsch, putting a PIP in place, and ultimately terminating him.

69. Bias against men was a motivating factor behind Defendant U-M's decision to place him on a PIP and terminate him.

70. Defendant U-M applied its policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing him serious and unjustified damage.

71. Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title VII.

72. Defendant U-M's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling him to punitive damages.

73. As a direct and proximate result of Defendant U-M's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of income; loss of career opportunities and earning capacity; mental

and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT II
### Retaliation in Violation of Title VII
### 42 U.S.C. § 2000e *et seq.*
*(against Defendant University of Michigan)*

74. Plaintiff incorporates the preceding allegations as if fully restated herein.

75. At all relevant times, Defendant U-M employed greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and (f).

76. Plaintiff engaged in conduct protected by Title VII's unlawful employment practices provision, including opposing discrimination perpetuated by Defendant Fritsch and reporting her assaultive behavior.

77. But for Plaintiff's reporting Defendant Fritsch's discriminatory and assaultive behavior, he would have not been terminated.

78. Defendant U-M's actions constitute unlawful retaliation against Plaintiff because he engaged in a protected activity and was subjected to adverse employment actions, including, but not limited to, being placed on a PIP and termination.

79. As a direct and proximate result of Defendant U-M's unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not

limited to, loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT III
### Sex Discrimination in Violation of ELCRA
### M.C.L. 37.2201 *et seq*.
*(against all Defendants)*

80. Plaintiff incorporates the preceding allegations as if fully restated herein.

81. At all relevant times, Plaintiff was an employee, and Defendants were employers as defined by ELCRA.

82. At all relevant times, Defendant Fritsch was an agent of Defendant U-M.

83. The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented to suit under ELCRA on behalf of Defendant U-M, which is an arm of the state.

84. ELCRA prohibits discrimination in employment on the basis of sex.

85. Plaintiff was qualified for his position as Multifunction Material Management Senior Supervisor.

86. Defendants subjected Plaintiff to intentional discrimination based on his sex by arbitrarily and capriciously disregarding his complaint against Defendant Fritsch, putting a PIP in place, and ultimately terminating him.

87. Bias against men was a motivating factor behind Defendants' decisions to place him on a PIP and terminate him.

88. Defendants applied their policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing him serious and unjustified damage.

89. Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of ELCRA.

90. Defendants acted willfully.

91. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT IV
### Retaliation in Violation of ELCRA
### M.C.L. 37.2201 *et seq.*
*(against all Defendants)*

92. Plaintiff incorporates the preceding allegations as if fully restated herein.

93. At all relevant times, Plaintiff was an employee and Defendants were employers as defined by ELCRA.

94. At all relevant times, Defendant Fritsch was an agent of Defendants U-M.

95. The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented to suit under ELCRA on behalf of Defendant U-M, which is an arm of the state.

96. Plaintiff engaged in conduct protected by ELCRA's anti-retaliation provision, including opposing discrimination perpetuated by Defendant Fritsch and reporting her assaultive behavior.

97. But for Plaintiff's reporting Defendant Fritsch's discriminatory and assaultive behavior, he would have not been terminated.

98. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT V
**Assault and/or Battery**
*(against Defendant Fritsch)*

99. Plaintiff incorporates the preceding allegations as if fully restated herein.

100. On July 7, 2022, Defendant Fritsch made an intentional and unlawful threat to do bodily injury to Plaintiff.

101. Defendant Fritsch's threat was made under circumstances which created in Plaintiff a well-founded fear of imminent peril.

102. Defendant Fritsch had the present ability to carry out the act and ultimately, she did.

103. Defendant Fritsch willfully and intentionally touched Plaintiff against Plaintiff's will.

104. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## RELIEF REQUESTED

For all of the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

a. Declare the practices and actions of Defendants as unlawful employment practices in violation of Title VII, ELCRA, and/or state Assault and/or Battery law;

b. Compensatory damages in whatever amount he is found to be entitled;

    c.      Exemplary damages in whatever amount he is found to be entitled;

    d.      Punitive damages in whatever amount he is found to be entitled;

    e.      Interest, costs, reasonable attorney fees, and expert witness fees;

    f.      Equitable relief as deemed appropriate by this Court; and

    g.      Whatever other relief this Court finds appropriate.

Respectfully Submitted,

**NACHTLAW, P.C.**

*/s/ David A. Nacht*
David A. Nacht (P47034)
Attorneys for Plaintiff
501 Avis Dr, Ste. 3
Ann Arbor, MI 48108
(734) 663-7550

Dated: May 15, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MILLER,

    Plaintiff,

v.

UNIVERSITY OF MICHIGAN, and
BARB FRITSCH, *sued in her
personal and official capacities*,

Defendants.

Case No.

Hon.

| |
|---|
| David A. Nacht (P47034) <br> NACHTLAW, P.C. <br> *Attorneys for Plaintiff* <br> 501 Avis Drive, Suite 3 <br> Ann Arbor, MI 48108 <br> (734) 663-7550 <br> dnacht@nachtlaw.com |

## JURY DEMAND

NOW COMES Plaintiff Robert Miller ("Plaintiff"), by and through his attorneys, NACHTLAW, P.C., and hereby demands a trial by jury in the above-captioned matter for all issues so triable.

    Respectfully Submitted,

    **NACHTLAW, P.C.**

    */s/ David A. Nacht*
    David A. Nacht (P47034)
    Attorneys for Plaintiff
    501 Avis Dr, Ste. 3
    Ann Arbor, MI 48108

(734) 663-7550

Dated: May 15, 2024